UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROBERT WELLS,                                         :

               Plaintiff,           :           <u>OPINION & ORDER</u>

       -v.-                               :
                                     20 Civ. 10861 (GWG)
COMMISSIONER OF SOCIAL SECURITY,        :

             Defendant.             :
------------------------------------------------------------x
**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

       Plaintiff Robert Wells brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial

review of the final decision of the Commissioner of Social Security (the "Commissioner")

denying his claim for Disability Insurance Benefits under the Social Security Act ("the Act").

The Commissioner has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1]

Wells has not filed an opposition to the Commissioner's motion, other than a letter that notes a

recent hospitalization and that asks that the case be "resolved without any further delays by the

Defendant." <u>See</u> Letter from Robert Wells, filed Jan. 21, 2022 (Docket # 22).

       For the reasons set forth below, the Commissioner's motion is granted.

I. <u>BACKGROUND</u>

     A. <u>Procedural History</u>

       On November 8, 2018, Wells filed an application for disability insurance benefits,

alleging a disability that began on September 5, 2018.  SSA Administrative Record, filed July 6,

2021 (Docket # 12) ("R."), at 167.  Wells' application was denied on initial review on January 3,

---

[1]  Defendant's Motion for Judgment on the Pleadings, filed Sept. 24, 2021 (Docket # 17); Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings, filed Sept. 24, 2021 (Docket # 18) ("Def. Mem.").

2019, see R. 78, and on reconsideration on April 16, 2019, see R. 91, after which Wells requested a hearing before an administration law judge ("ALJ"), see R. 92.  A hearing was held on November 4, 2019.  See R. 34-69.  In a written decision dated February 13, 2020, the ALJ found that Wells was not disabled and denied Wells' claim.  See R. 13-25.  Wells requested a review by the Appeals Council, which was denied on September 18, 2020.  See R. 1-6.  On December 21, 2020, Wells filed this action seeking review of the ALJ's decision.  See Complaint, filed Dec. 21, 2020 (Docket # 2).

     B.  The Hearing Before the ALJ

     The hearing was held in the Bronx, New York.  See R. 34.  Wells and his counsel appeared in person.  See R. 36.  Vocational Expert ("VE") Yaakov Taitz testified by telephone. See R. 62-68.

     Wells testified that he was not working at the time of the hearing, and that he had not worked since September 5, 2018, due to a stroke that limited his vision in his left eye.  See R. 41, 46-47, 54.  Wells lives with his girlfriend in an apartment in the Bronx, New York.  See R. 36, 39.  Wells attended one year of college.  See R. 39-40.  Before September 2018, Wells had worked as an order picker and as a hand packager.  See R. 41-44, 63.

     Wells testified that he had difficulty navigating spaces outside his home due to his poor depth perception and limited range of vision in his left eye.  See R. 47-50.  Wells testified that he also experienced cramping in his back, which limited his ability to sit or lay down for extended periods of time.  See R. 51-52.  Wells stated that his vision problems had worsened his mental health, limiting his ability to stay motivated.  See R. 52, 54.

     Wells reported that he had not driven a car since he experienced the stroke in his left eye. See R. 62.  Wells testified that he generally did not prepare his own meals, but that he often

assisted with household chores such as cleaning and doing the laundry.  See R. 58, 61.  Wells

often socialized with others within his home.  See R. 60.  Wells reported frequently drinking

alcohol.  See R. 59-60.

Following Wells' testimony, the ALJ questioned the VE.  See R. 63.  Specifically, the

ALJ inquired about the employability of an individual with Wells' age, education, and

background who could perform all levels of exertional work, could never climb any ladders,

ropes, or scaffolds, would need to avoid concentrated exposure to respiratory irritants, would

need to avoid all exposure to workplace hazards such as unprotected heights and machinery,

would be limited to simple tasks, could tolerate few workplace changes and no more than

occasional interaction with others, and could not perform any activities requiring depth

perception or bilateral far visual acuity.  Id.  The VE testified that such a person could not

perform Wells' past relevant work but could perform the occupations of linen room attendant,

office cleaner, and dining room attendant.  See R. 65-66.[2]  The ALJ then asked generally about

employers' tolerance for off-task behavior; the VE responded that, for the jobs listed, up to 10%

of time spent off-task would be acceptable.  See R. 66.  In response to questioning from

plaintiff's counsel, the VE stated that the occupations identified as available for the hypothetical

worker would not be available if that individual could stand for only one-third of the day.  See R.

67-68.

C.  The Medical Evidence

The Commissioner has provided a detailed summary of the medical evidence.  See Def.

Mem. at 2-9.  The Court directed Wells to specify any objections he had to the Commissioner's

---

[2]  Although the hearing transcript refers to the occupation of "live-in room attendant," see
R. 65, subsequent questioning clarifies that the identified occupation was actually "linen room
attendant," see R. 67.

summary of the record, <u>see</u> Order, dated Jan. 21, 2022 (Docket # 23), and he has not done so.
Accordingly, we adopt the Commissioner's summary of the medical evidence as accurate and
complete for purposes of the issues raised in this suit.  We discuss the medical evidence pertinent
to the adjudication of this case in Section III below.

    D.  <u>The ALJ's Decision</u>

    The ALJ denied Wells' application on February 13, 2020.  <u>See</u> R. 25.  In doing so, the
ALJ concluded that Wells had not been under a disability within the meaning of the Social
Security Act from September 5, 2018, through the date of the ALJ's decision.  <u>Id.</u>

    Following the five-step test set forth in the Social Security Administration ("SSA")
regulations, the ALJ found that Wells met the insured status requirements through December 31,
2023, and "has not engaged in substantial gainful activity since September 5, 2018, the alleged
onset date."  R. 15.  At step two, the ALJ found that Wells "has the following severe
impairments: left vision loss from retinal artery occlusion; depressive disorder; anxiety disorder;
diverticulosis; mild emphysema and asthma; anemia; and chronic kidney disease."  R. 16.  The
ALJ explained his finding that Wells' other medical conditions — such as thoracic degenerative
disc disease, fatty liver, coronary artery calcification, renal cyst, gallbladder polyp, and
gastroesophageal reflux disease — were non-severe, as the "objective medical evidence related
to these conditions reflects overall modest findings, routine and conservative management, and
scant reference to meaningful ongoing symptoms, complications, or limitations related to these
conditions."  <u>Id.</u>  The ALJ found that there was "no substantial evidence that these non-severe
impairments have had more than a minimal effect on the claimant's ability to perform work-
related activities that has lasted, or could reasonably be expected to last, at least 12 consecutive
months."  <u>Id.</u>

At step three, the ALJ found that Wells "d[id] not have an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1" during the relevant period.  Id.  The ALJ specifically considering listings 2.02 ("Loss of central visual acuity"), 2.03 ("Contraction of the visual field in the better eye"), 2.04 ("Loss of visual efficiency"), 3.02 ("Chronic respiratory disorders"), 3.03 ("Asthma"), 6.05 ("Chronic kidney disease with impairment of kidney function"), 6.06 ("Nephrotic syndrome"), and 6.09 ("Complications of chronic kidney disease").  Id.; see also 20 C.F.R., Pt. 404, Subpt. P, App. 1.  As to listings 2.02, 2.03, and 2.04, the ALJ concluded that vision records did not establish the limitations in Wells' vision in his right eye that was required to satisfy these listings.  See R. 16.  As to listings 3.02 and 3.03, the ALJ found that there were no diagnostic tests demonstrating reduced pulmonary function as required by these listings, nor was there any indication that Wells' asthma and emphysema had required hospitalization or other acute care at the frequency required for the listings.  Id.  As to listings 6.05, 6.06, and 6.09, the ALJ found that the record did not contain objective findings suggesting the degree of renal impairment required to meet the listing.  Id.

The ALJ then turned to Wells' mental impairments, applying the "paragraph B" criteria to conclude that Wells' symptoms did not meet or equal listings 12.04 or 12.06.  See R. 17.  To satisfy the paragraph B criteria, a claimant's "mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning," which include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.  Id.  The ALJ found that Wells had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace;

and a moderate limitation in adapting or managing himself.  See R. 17.  Accordingly, the ALJ

concluded that Wells did not satisfy the paragraph B criteria and did not meet listings 12.02 or

12.04.  See id.  The ALJ reached the same conclusion as to the paragraph C criteria, as Wells had

only a distant history of psychiatric hospitalization and the evidence did not suggest that Wells

was at risk of suffering an "acute symptom exacerbation or deterioration."  Id.

Before moving to step four, the ALJ assessed Wells' residual functional capacity

("RFC") for the relevant period.  See R. 18.  The ALJ determined that, although Wells'

"medically determinable impairments could reasonably be expected to cause some of the alleged

symptoms," R. 19, Wells' testimony "concerning the intensity, persistence, and limiting effects

of these symptoms [was] not consistent with the record as a whole," id.  The ALJ concluded that

Wells had the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional
> limitations: He can never climb any ladders, ropes, or scaffolds.  He needs to avoid
> concentrated exposure to respiratory irritants like fumes, odors, dust, and gases.  He
> needs to avoid all exposure to workplace hazards, such as unprotected heights and
> unprotected machinery.  He can never operate a motor vehicle in a vocational setting.  He
> is limited to simple tasks.  He can tolerate few, if any, workplace changes.  He can
> tolerate no more than occasional interaction with the public, co-workers, and supervisors.
> He cannot perform any activities that require depth perception and has no capacity for far
> visual acuity with the left eye.  He also needs ready access to a restroom.

R. 18.  The ALJ reasoned that Wells' physical and mental impairments could reasonably be

expected to interfere with his daily functioning, but found that "the overall record simply does

not contain evidence consistent with exertional limitations or the extensive degree of reduced

functioning alleged by the claimant."  R. 19.  In assessing Wells' RFC, the ALJ reviewed and

analyzed the opinions of Drs. Dayan, Fishman, Algamoos, Bhamre, Gulati, Retter, Finegan, and

Schaich.  See R. 19-23.  The ALJ found persuasive Dr. Finegan's opinion that Wells could not

perform tasks requiring "full, normal visual fields, as in operation of a forklift," a conclusion that

the ALJ determined to be supported by Dr. Finegan's findings and other evidence in the record.
<u>See</u> R. 22.  The ALJ also found that Wells' self-reported activities of daily living suggested "a
level of functioning that is not inconsistent with" the performance of some work activity, subject
to the limitations set forth in the RFC.  <u>See</u> R. 23.

 At step four, the ALJ concluded that Wells was "unable to perform any past relevant
work," during the relevant time period.  <u>Id.</u>  Finally, at step five, considering Wells' "age,
education, work experience, and residual functional capacity," and relying on the hearing
testimony of the VE, the ALJ found that Wells was "capable of making a successful adjustment
to other work that exists in significant numbers in the national economy."  R. 24.  Accordingly,
the ALJ determined that Wells was not disabled.  R. 25.

## II.  <u>GOVERNING STANDARDS OF LAW</u>

 A.  <u>Scope of Judicial Review Under 42 U.S.C. § 405(g)</u>

 A court reviewing a final decision by the Commissioner "is limited to determining
whether the [Commissioner's] conclusions were supported by substantial evidence in the record
and were based on a correct legal standard."  <u>Selian v. Astrue</u>, 708 F.3d 409, 417 (2d Cir. 2013)
(per curiam) (punctuation omitted); <u>accord</u> <u>Greek v. Colvin</u>, 802 F.3d 370, 374-75 (2d Cir. 2015)
(per curiam); <u>see</u> <u>generally</u> 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social
Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Even
where the administrative record may also adequately support contrary findings on particular
issues, the ALJ's factual findings must be given conclusive effect so long as they are supported
by substantial evidence."  <u>Genier v. Astrue</u>, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam)
(punctuation omitted).  Thus, "[i]f the reviewing court finds substantial evidence to support the
Commissioner's final decision, that decision must be upheld, even if substantial evidence

supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454
(S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a
claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted);
accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial
evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)
(punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938));
accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It
means — and means only — such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019)
(punctuation omitted). "[T]he threshold for such evidentiary sufficiency is not high." Id. The
Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts,
[a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise."
Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in
original) (punctuation omitted). "The role of the reviewing court is therefore quite limited and
substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d
at 454 (punctuation omitted).

B. Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has lasted or can be expected to
last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id.
§ 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (citations omitted) (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience.  See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  Fourth, if the claimant's

impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work."  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is able to do such work, he or she is not disabled.  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot perform other work, he or she will be deemed disabled.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III.  DISCUSSION

Wells has not filed an opposition to the Commissioner's motion for judgment on the pleadings that identifies any errors in the ALJ's decision.  Accordingly, we review the Commissioner's argument that the ALJ's decision was supported by substantial evidence, including both the ALJ's RFC determination and the ALJ's conclusion that Wells could perform work that exists in significant numbers in the national economy.  See Def. Mem. at 13-20.

A.  RFC Determination

The ALJ's RFC determination was supported by substantial evidence.  As to Wells' impairment in his left eye, which Wells testified was the primary limitation on his ability to work, see R. 46-47, we find that the ALJ appropriately tailored the RFC to account for Wells' visual impairment.  The RFC provided that Wells could never climb ladders, ropes, or scaffolds, nor could he drive a car or be exposed to workplace hazards such as "unprotected heights and

unprotected machinery." R. 18.  These limitations were consistent with the opinion of Wells'

primary care physician, Dr. Algamoos, who recommended that Wells avoid climbing ladders.

<u>See</u> R. 332.  Dr. Putcha, the State agency medical consultant, concluded that Wells' only visual

limitation was in far acuity on the left side.  <u>See</u> R. 74.  The RFC incorporated this specific visual

limitation expressly, providing that Wells "has no capacity for far visual acuity with the left

eye." R. 18.  Recognizing Wells' lack of depth perception, the ALJ also included a restriction in

the RFC that Wells could not "perform any activities that require depth perception." <u>Id.</u>

The ALJ's RFC also provided restrictions based on Wells' mental impairments.  <u>See</u> R.

17-18.  These restrictions are consistent with the evidence in the record.  Consultative psychiatric

examiner Dr. Schaich evaluated Wells and concluded that he had moderate limitations in

interacting with others and in regulating his emotions, controlling his behavior, and maintaining

his well-being.  <u>See</u> R. 326.  The ALJ incorporated these restrictions into Wells' RFC, limiting

him to only occasional interaction with the public and providing that he could experience few, if

any, changes in workplace setting.  <u>See</u> R. 18.  Although Dr. Schaich found no limitations in

Wells' ability to apply simple instructions, understand, remember, or apply complex directions,

or use reason and judgment to make work-related decisions, <u>see</u> R. 326, the ALJ limited Wells to

simple tasks, <u>see</u> R. 18, apparently addressing Dr. Schaich's finding that Wells' cognitive

function was below average, <u>see</u> R. 326.

The RFC appropriately addressed Wells' remaining conditions.  The ALJ incorporated

Wells' diagnoses of asthma and mild emphysema into the RFC, limiting his exposure to

"respiratory irritants like fumes, odors, dust, and gases." R. 18.  This limitation was supported

by the record, which also contains objective medical evidence suggesting that greater limitations

were not required.  For example, a spirometry performed during Wells' appointment with Dr.

Gulati found normal results, <u>see</u> R. 425-33, and Dr. Algamoos noted that Wells was not experiencing shortness of breath, <u>see</u> R. 499.  Next, although Wells reported to Dr. Algamoos that he experienced tremors in his hands when he extended them, <u>see</u> R. 337, Dr. Finegan concluded that Wells retained hand and finger dexterity as well as grip strength, <u>see</u> R. 321, and at least one other physical examination noted that Wells did not have any tremors, <u>see</u> R. 343. Moreover, in his adult function report, Wells declined to identify functional limitations associated with these tremors, providing no response when asked how his conditions affected his ability to use his hands.  <u>See</u> R. 213.  As to Wells' remaining conditions, including his hypertension and chronic kidney disease, no medical sources in the record identified these conditions as creating restrictions on Wells' functioning.

In sum, the ALJ carefully considered each of Wells' medical impairments, paying special attention to his visual impairments, and formulated an RFC that was consistent with the overall record.  Substantial evidence thus supported the ALJ's determination that more severe restrictions were not necessary, as the ALJ did not significantly deviate from any medical source opinion in the record.  Because the ALJ's findings were supported by substantial evidence, they "must be given conclusive effect."  <u>Genier</u>, 606 F.3d at 49.

B.  <u>Wells' Ability to Perform Available Work</u>

The ALJ's determination that Wells could make "a successful adjustment to other work that exists in significant numbers in the national economy," R. 25, is also supported by substantial evidence.  Because Wells did not have exertional limitations, and because his mental limitations were fairly modest, the only potential area of infirmity in this aspect of the ALJ's decision would involve his visual impairments.  The ALJ posed a hypothetical individual to the VE that could not perform "<u>any</u> activities that require depth perception."  R. 63 (emphasis

added).  The VE testified that there were several occupations with a significant number of jobs available for such a person.  <u>See</u> R. 64-66.  The ALJ was thus attentive to the depth perception limitation, confirming with the VE that "there is no depth [perception] requirement" for the jobs the VE identified.  <u>See</u> R. 68.

The ALJ's decision also addressed a post-hearing letter submitted by Wells, which objected to the VE's determination that Wells could perform the identified occupations.  <u>See</u> R. 24-25 (citing R. 279).  Wells' letter raised objections to several of the occupations based on requirements that the record in fact suggested Wells could meet, such as the occasional need for near acuity.  <u>See</u> R. 279; R. 74 (finding no limitations in Wells' near acuity).  Further, Wells' insistence that positions such as dining room attendant would require more than occasional interaction with the public, <u>see</u> R. 280, is inconsistent with the VE's testimony, <u>see</u> R. 65-66, and Wells' own views cannot overcome that testimony.  Similarly, while Wells identifies language in the Dictionary of Occupational Titles that a linen room attendant "may" need to "mend[] torn articles with needles and thread or sewing machine," <u>see</u> R. 279, we cannot find that this possibility renders erroneous the VE's express testimony that the position does not require depth perception.

Accordingly, we conclude that the ALJ's finding that there were "jobs that exist in significant numbers in the national economy that the claimant can perform," R. 24, was supported by substantial evidence.  We are therefore obligated to defer to the ALJ's conclusion.  <u>See</u> <u>Brault</u>, 683 F.3d at 447-48.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings

(Docket # 17) is granted.  The Clerk is requested to enter judgment.

SO ORDERED.

Dated:  September 1, 2022
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge